IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Janet Johnson Capers, | ) | Civil Action No. 2:10-3163-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Behr Heat Transfer Systems, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [Doc. 74]. Although not expressly identified, the plaintiff has essentially pled claims for race and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964 (as amended) ("Title VII"); age discrimination under the Age Discrimination in Employment Act ("ADEA"); and disability discrimination pursuant to the Americans with Disabilities Act. More specifically, it appears that the plaintiff has meant to plead claims for discriminatory discharge and other disparate treatment pursuant to both Title VII and the ADEA. (See generally Amend. Compl.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**BACKGROUND**

The defendant hired the plaintiff on or about May 12, 1997 as a production associate in its North Charleston, South Carolina facility. (Def. Exs. B, C.) The defendant has produced evidence that the plaintiff's performance, for the duration of her employment, was characterized by performance warnings; improvement plans; various counseling, verbal and written; and marginal evaluations. (Def. Exs. E, F, H, I, J, K, O P, Q, S, T, U, W, X, Y, Z; Pl. Dep. at 116, 130-31.)

Several specific instances, however, seem to have led to the termination of her employment, now at issue in this case. On August 26, 2008, the plaintiff, asked her supervisor, David Finley, if she could take an unscheduled break and leave her work area to retrieve something from her car for another coworker who had already clocked out. (Amend. Compl. at 2; Def. Ex. AA; Hamilton Aff. ¶ 5.) Finley did not give the plaintiff permission to leave her work area and recommended that she make alternate plans with the co-worker. (Def. Ex. AA.) Finley specifically told the plaintiff not to go to the parking lot. *Id.* Approximately twenty minutes later, in alleged violation of her supervisor's instructions, the plaintiff was observed by Production Supervisor, Josh Bowne, and the site security system, taking an unscheduled and unauthorized break in the parking lot. *Id.* As a result of these "inappropriate and insubordinate" actions, the plaintiff was suspended for three days. *Id.* The defendant informed the plaintiff she was "expected to follow all directions from [her] Supervisor and not to leave [her] work station unattended and without permission." *Id.* Further, the defendant informed the

plaintiff that "[a]ny additional instances of inappropriate or insubordinate behavior may result in additional disciplinary action, up to and including termination of employment." *Id.* The plaintiff signed a written personnel report documenting the August 26, 2008, incident, on September 2, 2008. *Id.*

The defendant alleges that, on February 23, 2009, the plaintiff again disregarded her supervisor's instructions. The plaintiff was allegedly instructed by Bowne to remove a part from the production process in order for him to determine if the part was defective. (Def. Exs. CC.) Bowne apparently instructed the plaintiff numerous times to place a tag on the part to identify it as potentially defective and then to place the part in the rework area while he went to get the measuring gauge to determine if the part was within proper specifications. (Def. Exs. CC.)

When Bowne returned with the measuring gauge, the plaintiff had not tagged the part, nor had she placed the part in the rework area. (Def. Exs. CC; Pl. Dep. at 172, 179.) The plaintiff admitted she did not know what had happened to the part and that she had failed to tag the part. (Def. Exs. CC; Pl. Dep. at 179.)

After finalizing its investigation of the February 23, 2009 incident and based upon the plaintiff's "repeated instances of inappropriate and insubordinate behavior," culminating in the September 2, 2008 Personnel Report and a February 27, 2009 Personnel Report, the defendant terminated its employment relationship with the plaintiff, effective February 27, 2009. (Def. Exs. AA, CC.)

Without much explanation, the plaintiff contends that all of these instances were

3

the result of race, age, sex, and/or disability discrimination. (Pl. Resp. at 2.) The plaintiff generally contends that her layoff was on account of her age and then recounts much earlier incidents where she was allegedly denied a promotion for her gender and discriminated against for a disability suffered in a car accident. *Id.*

## STANDARD OF REVIEW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of

the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The defendant has moved for summary judgment on all of the plaintiff's claims for race, sex, age, and disability discrimination. The defendant has generously interpreted the plaintiff's Amended Complaint to include the following discrimination claims: (1) she was disciplined for taking an unscheduled, unauthorized break when employees of other races also took such breaks and were not disciplined, (Am. Compl. ¶¶ 1.6, 1.8); (2) she was denied a promotion to a lead position, which was given to a

5

white male, (Pl. Dep. at 94); (3) other employees "sabotaged" her work efforts, (Pl. Dep. at 92); (4) she was discriminated against on the basis of a purported disability, (Amend. Compl. ¶¶ 3.8, 4.6); and (5) she was terminated because of her race and age (Pl. Dep. at 231).

As an initial matter, the Court would say that the plaintiff has not met her burden on summary judgment. The Court appreciates the difficult task of building and explaining a case, without the assistance of trained legal counsel. But, the plaintiff's written summary judgment response is only her Amended Complaint resubmitted. [Compare Doc. 44 with Doc. 78.] And, while she has included some documentation and affidavit, none meets the demands of the present motion. Her numerous affidavits are offered by unidentified individuals, who have expressed neither their age nor title nor source of personal knowledge. The substance of those affidavits is boilerplate, conclusory, and generalized in a way that cannot create issues of fact concerning any element of the plaintiff's claims material to a result in her favor.[1]

That being said, the defendant has been fair in its presentation of the record, even where the plaintiff has not supported her own position, and the Court has considered it all.

**I.  ADEA Claim**

The defendant first contends that the plaintiff's claim for age discrimination

---

[1] Most read in relevant part: "I have known Janet Johnson Capers for years and have never known her to be inappropriate or to be insubordinate with anyone." [Doc 78-2.]

should be dismissed as it was not properly and administratively exhausted. Prerequisite to bringing a judicial action, it is well-understood that a plaintiff in South Carolina must file a charge of discrimination within 180 days (for claims arising under South Carolina Human Affairs Law) or 300 days (for claims arising under Title VII, since South Carolina is a deferral state) after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5; S.C. Code § 1-13-90; *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995).

As the defendant emphasizes, the scope of a charge of discrimination limits the scope of any subsequent litigation; claims not included in the charge of discrimination are barred from judicial review. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509, 513 (4th Cir. 2005); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."); *see also Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

The plaintiff, here, plainly did not include any allegations relating to age discrimination in her charge but only as to race, sex, and disability. (Def. Ex. DD.) The charge "never mentioned age or alleged that age was a factor" in the defendant's alleged discriminatory treatment of the plaintiff. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). And, the plaintiff never timely amended her

7

Charge to include an age discrimination accusation. *See id.* In her Charge, she was expressly invited to check boxes regarding the basis for her claims and she elected race, sex, and disability only, even where age was plainly available. (Def. Ex. DD at 3.) Likewise, the plaintiff made the identical election in her EEOC Intake Questionnaire. (See Def. Ex. EE at 2.) In fact, in both documents, she essentially had to skip, with a pen stroke, the "Age" box moving from the "Sex" to the "Disability" one. (Def. Exs. DD at 3, EE at 2.)

The plaintiff makes no response or defense as to the exhaustion of the ADEA claim. Accordingly, that claim cannot be considered now and should be dismissed.

**II.    Gender/Sex Discrimination**

In her Complaint and response brief on summary judgment, the plaintiff hardly makes an allegation concerning sex discrimination. But, it appears that the only discernable basis for a claim, in this respect, happened, if at all, outside the applicable statute of limitations.

In her Amended Complaint, she contends that she "organized[] and trainned [sic] everyone that came to work in the GMT assembly area[,] but when production started[,] I applied for the lead position but was denied the job it was given to a man of another race." [Doc. 44 at 3.] She repeats, verbatim, this allegation in her Summary Judgment response. [Doc. 78 at 2.] On deposition, she agreed that she was alleging no other act of sex or gender discrimination. (Pl. Dep. at 235.) And, the only evidence of record, by the plaintiff's own admission, indicates that the denial of the promotion in question

8

occurred "before 2004." *Id.* at 236.

A plaintiff must first exhaust her administrative remedies by bringing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007) (Title VII); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (Title VII); *Fisher v. Securitas Sec. Serv. USA Inc.*, 2010 WL 568234, at *3 (D.S.C. Feb. 12, 2010) (Title VII and ADEA claims); *Strickland v. Baker*, 2010 WL 146816, at **3-4 (D.S.C. Jan. 11, 2010) (Title VII and ADA claims). Title VII establishes two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117(a) (ADA). The standard limitations period for filing a charge is 180 days after the alleged unlawful employment practice. *Id.* The limitations period is extended to 300 days, however, when state law proscribes the alleged employment practice and the charge has initially been filed with a state or local deferral agency. *See* 42 U.S.C. §2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). Claims which are based upon discriminatory acts which fall outside this 300 day period are time barred. *See Gilliam v. South Carolina Dept. Of Juvenile Justice,* 474 F.3d 134, 139 (4th Cir. 2007); *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *Mickel v. S.C. State Employment Serv.*, 377 F.2d 239, 242 (4th Cir. 1967).

It is plain the alleged denial of promotion based on sex or gender discrimination, arising before 2004, occurred more than 300 days prior to even the plaintiff's May 8,

9

2009 initial correspondence with the EEOC. (See Def. Ex. EE.) It is, therefore, time-barred. The plaintiff makes no riposte.

**III.     Americans with Disabilities Act Claim**

The defendant next contends that the plaintiff's disability discrimination claim should be dismissed. It is hard to know what the plaintiff intends by it. The plaintiff alleges she was discriminated against on the basis of disability based on her "[belief] that [she] was discriminated against because of . . . the injury [she] sustained [during] a car accident." (Amend. Compl. at 3; Pl. Dep. at 236.) The car accident occurred in March of 2004 and was not work-related. (Pl. Dep. at 63-64.) The plaintiff nowhere offers what disability she had. Although the defendant cites her deposition (Pl. Dep. at 66), the plaintiff herself does not suggest what limitations or accommodations were necessary. More importantly, the plaintiff has not offered how she was discriminated against on account of her disability by any act of the defendant.

The only evidence of record suggests the following. The plaintiff acknowledges the defendant provided her with the necessary leave of absence for approximately three months in 2004. (Pl. Dep. at 62.) As documented by her return-to-work certification dated May 11, 2004, the plaintiff was permitted to return to work on May 12, 2004 with a two-week restriction on lifting. (Def. Ex. FF; Pl. Dep. at 66.) The plaintiff never requested any accommodation or told anyone in management of a need for additional lifting restrictions. (Pl. Dep. at 67, 240-41.)

Lastly, the allegation seems out of time. Any discrimination seems almost

certainly to have arisen well over 300 days prior to May 8, 2009, considering the accident was in 2004. The plaintiff has not offered any evidence that disability discrimination occurred within the necessary window.

For all these reasons, the claim is dismissed.

## IV. Race Discrimination

Finally, the defendant has moved for summary judgment regarding the plaintiff's claim for discriminatory discharge, allegedly done on account of her race.

As the Fourth Circuit has explained, a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

The plaintiff, here, has not expressly elected. But, she has not proffered any direct evidence. In the employment context, direct evidence must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510 (4th Cir. 2006). The plaintiff's argument is mostly a guess or belief about what may have occurred to her. It is hardly evidence and is certainly not direct. Accordingly, the Court would consider her claims in light of the *McDonnell Douglas* proof scheme only. As stated, the plaintiff does not contend that it should be any other way or, more precisely, any way at all.

To the extent employed, *McDonnell Douglas* requires that an employee first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted).

However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

The defendant argues that the plaintiff cannot make out any *prima facie* case. It is likely that she cannot. The Court need not address it, however. She plainly cannot rebut its legitimate, nondiscriminatory reason for her termination.

> A. **Legitimate Non-Discriminatory Reason**

The defendant has met its burden to produce a legitimate, non-discriminatory reason for terminating the plaintiff's employemnt. Specifically, the defendant has cited various instances of insubordinate behavior, discussed in the "Background" section of this Order, including taking unscheduled breaks and refusing to remove and tag defective parts upon request. "Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment

13

decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.")

  **C.**  **Pretext**

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one. *See Reeves*, 530 U.S. at 142-43. As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144. Specifically, she claims that another individual took an unscheduled break but was not disciplined.

The plaintiff contends that "Hamilton" also took an unapproved break. (Pl. Resp. at 1.) But, Hamilton herself has sworn that she had already clocked out for the day and was not on break. (Hamilton Aff. ¶ 5.) Additionally, Hamilton is of the same race as the plaintiff. (Pl. Dep. at 217.) The plaintiff has offered no actual evidence that Hamilton took an unauthorized break. She just claims that she did.

Concerning tagging the defective part, the plaintiff recounts the incident but offers no real contradictory view. (Pl. Resp. at 2.) The defendant's account is essentially unreturned.

And, as stated, the numerous affidavits submitted by the plaintiff which

summarily contend she was "never . . . insubordinate" are ineffective to create issues of fact concerning the very specific instances recited and supported by the defendant and its evidence. And, her generalized belief or personal assertion that she "feels" as though she has been discriminated against is insufficient. *Hawkins, v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000); *see also Nichols v. Caroline County Bd. of Educ.*, 123 F. Supp.2d 320, 327 (D. Md. 2000)

The plaintiff cannot raise issues of fact as to the veracity of the defendant's reasons for termination. The claim is dismissed.

## **CONCLUSION**

Wherefore, based upon the foregoing, the defendant's motion for summary judgment [Doc. 74], is GRANTED. The plaintiff's case, therefore, is dismissed *with prejudice* in its entirety.

IT IS SO ORDERED.

            s/Bruce Howe Hendricks
            United States Magistrate Judge

June 13, 2012
Charleston, South Carolina.